UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TLC Realty 1 LLC d/b/a TLC
General Contracting, LLC,

          *Plaintiff,*

v.                                          Case No. 3:13-CV-56
                                            Judge Thomas M. Rose

Belfor USA Group, Inc.,

          *Defendant.*

---

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF No. 4. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS DISMISSED WITH PREJUDICE.  PLAINTIFF TO FILE PROPOSED AMENDED COMPLAINT BY DECEMBER 13, 2013.**

---

Pending before the Court is Defendant Belfor USA Group, Incorporated's Motion to Dismiss, ECF No. 4.  Plaintiff TLC Realty 1 LLC asserts three claims against Belfor; race discrimination, breach of contract, and unjust enrichment.  ECF 10 at 3–6.  TLC alleges that Belfor discriminated against TLC by terminating its contractual relationship with TLC and by refusing to award future work to TLC under the pretext of enforcing a provision in its Master Subcontract Agreement requiring subcontractors to hire W-2 employees.  *Id.* at ¶¶ 19–29.  TLC alleges that race was the reason for the discrimination. *Id.* at ¶ 27.  Further, TLC alleges that Belfor's actions breached an implied contract provision, based on a supervisor's verbal modification of the W-2 requirement. *Id.* at ¶¶ 30–34.  Lastly, TLC brings a claim of unjust enrichment, based on services that TLC provided to Belfor on a job under the Master

1

Subcontract Agreement that Belfor refused to submit payment for. Id. at ¶¶ 35–39.  Belfor responds TLC has failed to plead enough facts to show a plausible claim of race discrimination, namely in that TLC has not alleged it was treated differently than a "similarly-situated" contractor, or that the termination was "because of" race.  ECF 4 at 6–10.  Additionally, Belfor claims that the verbal modification is not enforceable, it did not breach the contract, and TLC's unjust enrichment claim is barred due to the existence of an express contract. *Id.* at 10–12.  Finally, Belfor responds that if the discrimination claim is dismissed, the Court lacks jurisdiction over the breach of contract and unjust enrichment claims. *Id.* at 12–14.  Because TLC pled plausible claims of race discrimination and unjust enrichment, the Court denies Belfor's Motion with regard to the race discrimination and unjust enrichment claims.  Because the verbal modification is not enforceable, the Court grants Belfor's Motion with regard to the breach of contract claim.

## I.       Factual Background

Per the amended complaint, ECF 10, Plaintiff TLC Realty 1 LLC ("TLC") is a general contracting firm which specializes in home remodeling and reconstruction.  TLC is owned by Teaven Curtiss, an African-American man.  On August 22, 2012, Curtiss signed a Master Subcontract Agreement with Defendant Belfor USA Group, LLC ("Belfor"), which outlined the terms and conditions that would apply to subcontracts awarded by Belfor to TLC. ECF 5, Ex. 1 at 6.  The agreement included an integration clause:

> FIRST:  Subcontractor expressly agrees that any general conditions, terms of any kind, or covenants that are contained in Subcontractor's proposals, invoices of any other forms or any kind will be rendered null, void, and of no force or effect.  The terms of this Master Agreement will govern the parties' relationship for all work performed from the date of this Agreement until this Agreement is terminated.  Notwithstanding the foregoing, Work

Agreements will set forth the price, schedule and scope of work performed under this Master Agreement. This Master Agreement sets forth all of the general terms and conditions of the parties' agreements and supersedes all prior negotiations or understandings or agreements, written or oral, between BELFOR and Subcontractor. The terms of this Master Agreement cannot be modified except by a written document signed by both parties that specifically refers to this Master Agreement.

*Id.*

On the same day, Curtiss also signed an Affidavit of Subcontractor, which limited TLC's right to hire subcontractors:

2.      I agree that (s/Teaven Curtiss) will only use W-2 employees to perform work for Belfor under the Master Services Agreement ("MSA").

3.      I agree that I will not hire subcontractors or 1099 workers to perform any work for Belfor under the MSA.

4.      I understand that Belfor can, and will, execute random compliance checks of its job sites. I agree that my company will be solely responsible for the costs (including attorneys' fees) of any audit or investigation that Belfor deems necessary.

5.      I further understand that hiring subcontractors or 1099 workers shall be considered a material breach of the MSA, and agree that my company will be responsible for any damages, claims, or liabilities that arise from hiring subcontractors or 1099 workers. I further agree that Belfor may hold me personally liable for any damages, claims, or liabilities that arise from hiring subcontractors or 1099 workers.

*Id.* at 2**.**

Despite the terms of the Master Subcontract Agreement and the Affidavit of Subcontractor, Belfor's worksite supervisor verbally informed TLC that Belfor only requires subcontractors to "be populated with at least a majority of the workers as W-2 employees." ECF

3

10 at ¶ 11.  This was never memorialized in writing by either party.  Nevertheless, TLC complied with the worksite supervisor's assertion, and was awarded various jobs by Belfor. *Id*. at ¶ 12.

On one such job in Lima, TLC was forced to terminate the services of William Holt. Holt, a Caucasian subcontractor for TLC, failed to show up for work and also failed to complete his work responsibilities. *Id.* at ¶ 13.  Holt was replaced with an African-American contractor who completed the job. *Id.* at ¶ 14.  Soon after being terminated, Holt provided Belfor with negative information regarding TLC's performance on the Lima job. *Id.*

After Holt's termination and TLC's substantial completion of the Lima job, Belfor awarded a Huber Heights job to William Holt Contracting rather than to TLC. *Id.* at ¶ 15. William Holt Contracting is non-minority owned and does not have any W-2 employees. *Id.* at ¶¶ 15, 16.  TLC complained to Belfor about the award of the Huber Heights contract to a subcontractor with a workforce that did not meet the 50% W-2 minimum requirement. *Id.* at ¶ 16.  In response, Belfor terminated its contractual relationship with TLC and denied payment to TLC for the Lima job. *Id.*  Belfor's reasoning was that pursuant to the Master Subcontract Agreement and the Subcontractors Affidavit, TLC had materially breached the parties' express agreement by failing to employ a 100% W-2 workforce. *Id.*  TLC asserts that Belfor has failed to pay $16,100 for work and material provided on the Lima job.

On February 25, 2013, TLC filed a complaint asserting race discrimination in violation of 42 U.S.C. § 1981, breach of contract, and unjust enrichment.  On March 25, 2013, Belfor filed a motion to dismiss all three claims.  On April 29, 2013, TLC filed a motion and memorandum in response to the motion to dismiss, and "in the alternative," applied for leave to file an amended complaint.  Belfor responded and objected to the format of TLC's response, claiming that TLC's

motion was basically a request for an advisory opinion.  On July 30, 2013, the Court ordered TLC to supplement its motion to amend the complaint with a proposed amended complaint, which it did on August 9, 2013.[1]  On August 19, 2013, Belfor filed a supplemental memorandum in support of its motion to dismiss and again opposed TLC's motion for leave to amend the complaint.  TLC was given seven days to reply and opted not to, thus making the motion to dismiss ripe for decision.

## II.     Jurisdiction

The Court has federal question jurisdiction under 42 U.S.C. § 1981 for the employment discrimination claim.  The Court has supplemental jurisdiction over the breach of contract and unjust enrichment claims under 28 U.S.C. § 1367.

## III.    Legal Standard

Belfor seeks dismissal of TLC's claims under Fed. R. Civ. P. 8, 12(b)(1), and 12(b)(6). *Federal Rule of Civil Procedure 8(a)(2)* requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard does not require detailed factual allegations, but it does demand more than mere accusations devoid of factual backing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  A formulaic recitation of the elements of the cause of action will not suffice. *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550. U.S. at 570).  Facial plausibility requires enough factual content that a court could draw the

---

[1] TLC must formally file its Amended Complaint.  Although TLC did submit its Amended Complaint to the court, it was filed as a supplement to its motion to amend as a proposed amended complaint. TLC has until December 13, 2013 to correctly file its Amended Complaint.

reasonable inference that the defendant is liable for the misconduct alleged in the complaint. *Id.* (citing *Twombly*, 550 U.S. at 556).  The pleading must contain facts that push the claim past the line from conceivable to plausible. *Id.* (citing *Twombly*, 550 U.S. at 570).  If a claim is not entitled to relief, *Federal Rule of Civil Procedure 12(b)(6)* provides a defense and allows a court to dismiss the claim.

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss claims that the court lacks subject-matter jurisdiction over.  When determining whether to exercise supplemental jurisdiction over state law claims, federal courts balance the values of judicial economy, convenience to parties, fairness, and comity to state courts (including the interest in not needlessly deciding state law issues). *Packard v. Farmers Ins. Co. of Columbus, Inc.*, 423 Fed. App'x. 580, 584 (6th Cir. 2011).  "Generally, '[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Id.* (citing *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

IV.     **Discussion**

A.     **Proposed Motion to Amend**

In its response to Belfor's Motion to Dismiss and Application for Leave to File an Amended Complaint, TLC asserted it had pled viable claims to survive the motion, but to "eliminate confusion," requested leave to amend if the court did not overrule the motion:

> Plaintiff has pled a viable cause of action against Defendant under 42 U.S.C. § 1981, breach of a written contract and unjust enrichment.  However, to eliminate any confusion on this subject, Plaintiff has requested herein leave to file an amended complaint. This motion is made very early in this proceeding and Defendant would suffer no harm if it is granted.  Defendant's Motion to Dismiss should be overruled and/or Plaintiff should be granted

> leave to file its First Amended Complaint, in accordance with
> Federal Rule of Civil Procedure 15(a)(2).

ECF 7 at 4. Belfor asserts that this is improper pleading that does not indicate the grounds on which the amendment is sought, and is basically a request for an advisory opinion on the original complaint's deficiencies. The federal rules do not prescribe a specific method that is required to amend a complaint. *Drinkard v. Michigan Dept. of Corrections*, 2013 WL 3353935, at *2–3 (E.D. Mich. 2013). Rule 15(a)(2) allows a party to amend its pleading with the court's leave, and states "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P 15(a)(2). The non-moving party should demonstrate prejudice to prevent the amending of a pleading. *Id.* citing *Bridgeport Music v. Dimension Films*, 383 F.3d 390, 402 (6th Cir. 2004) ("Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.").

Also, Belfor opposes granting TLC's motion to amend for failure to comply with the mandate of S.D. Ohio Civ. R. 7.3 to seek consent on motions "to which other parties might reasonably be expected to give their consent." The Court also regrets TLC's failure to comply with rule 7.3, as one can only infer Belfor would have acted reasonably, and consented to the amendment, had TLC only asked, instead of following the path it did. As it stands, however, Belfor's opposition to the requested permission to amend renders TLC's failure to comply with S.D. Ohio Civ. R. 7.3 moot.

Here, it is early in the proceedings and TLC is not attempting to add a claim to its Complaint, rather it is merely clarifying select language. This is a technical modification, and Belfor will not be harmed by allowing TLC to amend its Complaint. Also, TLC included "Application for Leave to File Amended Complaint" in the title of its motion, and stated its grounds for the amendment—to eliminate confusion. The Court will allow TLC to amend its

Complaint with the Proposed Amended Complaint that was provided to the Court so that the case may be decided on its merits.[2]

## B.    Employment Discrimination

Belfor asserts that TLC's employment discrimination claim should be dismissed because TLC failed to meet the heightened pleading standard of *Twombly*, and TLC has not pled that it was treated differently than a "similarly-situated" subcontractor.  Belfor also asserts that TLC's discrimination claim depends upon an unenforceable alleged verbal modification to the Master Subcontract Agreement. ECF 11 at 8.

Section 1981 prohibits intentional race discrimination in the enforcing of contracts with private actors.  42 U.S.C. § 1981.  As Belfor points out, to prevail in a section 1981 commercial establishment claim, without direct evidence of discrimination, a plaintiff must meet the burden-shifting standard of proof outlined in *McDonnell Douglass Corp. v. Green*.  411 U.S. 792, 802–04 (1973).  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).  In the Sixth Circuit, a plaintiff must establish the following prima-facie case:

(1) he is a member of a protected class;

(2) he sought to make or enforce a contract for services ordinarily provided by the defendant; and

(3) he was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) he was deprived of services while similarly situated persons outside the protected class were not and/or (b) he received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id.* at 872.  Establishing the prima facie case is not meant to be "onerous," and the purpose of the prima facie case is "simply to 'eliminate[] the most common nondiscriminatory reasons for the

---

[2] TLC must still formally file this Amended Complaint with the Court.  For purposes of this order, however, the Court will rule on the Amended Complaint that was provided in ECF 10.

plaintiff's' treatment." *Id.* at 870 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Belfor contests whether TLC has pled sufficient facts to meet the requirement in subpart (3)(a), that TLC was deprived of services while similarly situated persons outside the protected class were not. The Court is befuddled as to what more Belfor would have TLC plead. TLC has named a person outside its protected class, and alleged a manner in which they were treated differently. According to the authority as quoted in Belfor's motion, this is sufficient.

Here, TLC pled that it was denied services under the Master Subcontract Agreement when Belfor learned of TLC's failure to meet the 100% W-2 requirement. The denial of services came in the form of denying payments and terminating the contractual relationship. Also, TLC pled that William Holt Contracting, which is not minority owned, was not deprived of services in that it was allowed to continue performing subcontract work for Belfor after TLC's contractual relationship was terminated, despite not meeting the 100% W-2 requirement.

This meets the plausibility requirement of *Twombly*. William Holt, the sole owner of William Holt Contracting, is outside of the protected class. It is plausible that William Holt Contracting and TLC are similarly situated, given that they work in the same industry, both entered into the same Master Subcontract Agreement with Belfor, and both were allowed to bid on the same Belfor projects. Also, William Holt has subcontracted for TLC on Belfor jobs before. The reasonable conclusion that TLC and William Holt Contracting are similarly situated pushes TLC's claim past the line from conceivable to plausible. As such, TLC has met its pleading burden and has satisfied the prima facie requirements from *Christian*.

9

Belfor also asserts that TLC has failed support its "otherwise unsupported conclusion" that William Holt Contracting does not have a 100% W-2 workforce.  This is a factual allegation that Belfor can either admit or deny.  Additional factual support is not necessary.

Lastly, Belfor's declaration that the discrimination claim relies on enforcing the 50% W-2 oral modification made by a Belfor supervisor is misguided.  The percentage of W-2 employees is irrelevant in determining whether Belfor discriminated against TLC.  The thrust of TLC's claim is that it was treated differently than a non-minority subcontractor.  Here, only enforcing the W-2 requirement (whether 100% or 50%) on TLC and not on William Holt Contracting is treating TLC differently than a non-minority subcontractor.  TLC has pled enough that a fact-finder could reasonably find TLC was discriminated against because of race.  Therefore, TLC's employment discrimination claim survives the motion to dismiss.

### C.  Breach of Contract

Belfor asserts that the oral modification of the Agreement should not be enforced, as the contract was fully-integrated and included a clause which expressly prohibited oral modifications.  The first term in the Master Subcontract Agreement stated:

> This Master Agreement sets forth all of the general terms and conditions of the parties' agreements and supersedes all prior negotiations or understandings or agreements, written or oral, between BELFOR and Subcontractor.  The terms of this Master Agreement cannot be modified except by a written document signed by both parties that specifically refers to this Master Agreement.

ECF 5, Ex. 1 at 6.  An Affidavit of Subcontractor was signed the same day as the Master Subcontract Agreement and it stated TLC would only use W-2 employees, and would not hire subcontractors or 1099 workers to perform any work.  *Id.* at 2.  Further, it stated that TLC understands that hiring subcontractors or 1099 workers shall be considered a material breach of

the Master Subcontract Agreement, and that TLC would be responsible for any damages, claims, or liabilities that arise from hiring subcontractors or 1099 workers. *Id.*

TLC's allegation of an oral modification by a worksite supervisor violates the parol evidence rule. In Ohio, when an agreement is unambiguous and has an integration clause, the Court is limited to the four corners of the agreement, and intentions not expressed in the agreement are deemed to have no existence. *Saad v. GE HFS Holdings, Inc.*, 366 Fed. App'x. 593, 600–01 (6th Cir. 2010). Accordingly, the Court will only look to the text of the agreement to determine if Belfor breached the contract.

The Affidavit of Subcontractor clearly states that hiring subcontractor or 1099 workers is considered a material breach of the Agreement. The twelfth term of the Master Subcontract Agreement states "[i]f Subcontractor . . . fails to comply with any terms in this Master Agreement . . . Subcontractor will be in breach of this Master Agreement and BELFOR may terminate this Master Agreement and any Work Agreement issued hereunder immediately without prior notice." ECF 5, Ex. 1 at 9. TLC does not allege that when Belfor terminated the Agreement, Belfor was otherwise in breach of the contract. Consequently, TLC's breach of contract claim is dismissed with prejudice.

## D. Unjust Enrichment

Lastly, Belfor asserts that the existence of the Master Subcontract Agreement bars recovery on an unjust enrichment claim. To prevail on an unjust enrichment claim, a plaintiff must establish a benefit conferred by the plaintiff upon the defendant, the defendant's knowledge of the benefit, and the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment. *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 Fed. App'x 374, 384 (6th Cir. 2011) (citing *Cantwell Mach. Co. v. Chicago Mach. Co.*, 920 N.E.2d 994, 996

(Ohio Ct. App. 2009)). Belfor's assertion is an overstatement of the law regarding the doctrine of unjust enrichment. A valid contract does not unequivocally preclude a claim of unjust enrichment. As this Court held in *United States v. United Technologies Corporation*, 2012 WL 2263280, it is the existence of a valid contract that includes "within its scope" the matter in dispute. 2012 WL 2263280, at *4–5. Thus, "there must be something in the contract that expressly governs the conduct that is the subject of the inequitable conduct at issue before the existence of the contract will be found to prevent the assertion of quasi-contractual claims for . . . unjust enrichment for that inequitable conduct. *Id.* at *5.

Here, it is uncontested that the Master Subcontract Agreement is a valid, binding contract on the parties. However, Belfor has failed to bring to the Court's attention a contract provision that would foreclose an unjust enrichment claim. Clause twelfth says "[i]f Subcontractor . . . fails to comply with any terms in this Master Agreement . . . Subcontractor will be in breach of this Master Agreement and BELFOR may terminate this Master Agreement and any Work Agreement issued hereunder immediately." ECF 5, Ex. 1 at 9. Clause twelfth goes on to say "Also, BELFOR may withhold payment on account of Subcontractor's failure to comply fully with any requirement of this Master Agreement or any Work Agreement and may retain monies owing or backcharge Subcontractor in such sums as are necessary to Indemnify BELFOR against losses, liabilities and obligations for which subcontractor is liable under any Work Agreement or this Master Agreement." *Id.* While withholding payment to TLC is an issue in in the case, indemnifying Belfor is not. As such, there is no contractual provision that expressly governs the matter in dispute and TLC's unjust enrichment claim is not barred. Belfor has not claimed that it must withhold all payment to indemnify it against losses, liabilities or obligations for which TLC

12

may be liable. As no other provision arguably governs the matter in dispute, TLC's unjust enrichment claim is not barred.

TLC has established a benefit it conferred on Belfor in the form of its labor and materials on the Lima job. TLC has established Belfor's knowledge of this benefit. Lastly, TLC has established it is plausible that it would be unjust to allow Belfor to retain the benefit without compensating TLC. As a result, the Court holds that TLC has stated a plausible claim for unjust enrichment.

## V.      Conclusion

TLC claims that Belfor discriminated against it in the enforcement of the W-2 provision, breached the Master Subcontract Agreement, and was unjustly enriched. In light of the foregoing, TLC has pled plausible claims of employment discrimination and unjust enrichment. Therefore, Belfor's motion to dismiss is **GRANTED** with respect to the breach of contract claim. Belfor's motion to dismiss is **DENIED** with respect to the employment discrimination claim and unjust enrichment claims.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 26, 2013.[3]

/s Thomas M. Rose
Thomas M. Rose
United States District Judge

---

[3] The Court acknowledges the valuable contribution and assistance of judicial extern Jack Hemenway in drafting this opinion.